```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :      CRIMINAL ACTION
                                :
          v.                    :
                                :
TODD GOODMAN and ERIC PESTRACK  :      NO. 22-435
                                :
```

MEMORANDUM

Bartle, J.                                       September 1, 2023

      The Government has filed a ten-count indictment against defendants Todd Goodman and Eric Pestrack.  It charges them with one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and nine counts of distribution of controlled substances in violation of 21 U.S.C. § 841.  Before the court is the motion of defendants (Doc. #31), under Rule 12(b) of the Federal Rules of Criminal Procedure, to dismiss the indictment on the grounds that "the government failed to allege and prove the elements necessary and failed to instruct the Grand Jury of the necessary elements."[1]  Defendants also move, in the alternative, for the court to order the

---

1.  The motion was originally filed by only defendant Pestrack and included a motion to permit the defendant to join in other applicable motions filed by his co-defendant.  Defendant Goodman also filed a motion to dismiss the indictment and join any applicable motions filed his co-defendant.  On August 8, 2023, the court entered an order (Doc. #36) joining each defendant as a movant in the other defendants' motions to dismiss.

government to provide a transcript of the legal instructions provided to the grand jury.

I

When a defendant moves to dismiss an indictment for failure to state an offense, the court limits its review to the four corners of the indictment and accepts as true its factual allegations. United States v. Huet, 665 F.3d 588, 595-96 (3d Cir. 2012). The defendant may not at this stage challenge the sufficiency of the evidence. United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000). Rather, the defendant is limited to demonstrating that the indictment on its face does not charge one or more essential elements of the offense. Huet, 665 F.3d at 595-96

II

According to the indictment, Mitchell Spivack was a registered pharmacist who owned and operated Spivack, Inc., which did business as Verree Pharmacy ("Verree").[2] Defendant Goodman worked part-time at Verree as a registered licensed pharmacist for approximately 20 years. His responsibilities included filling prescriptions, ordering medications, and assisting at the pharmacy counter. Defendant Pestrack worked

---

2. Spivack was charged elsewhere. He pleaded guilty and was sentenced to 41 months in prison. See U.S. v. Spivak, Criminal Action No. 22-166 (E.D. Pa.).

-2-

full-time at Verree as the lead pharmacy technician for over 30 years.  He assisted at the pharmacy counter, filled prescriptions under the direction of a pharmacist, and ordered medications, among other tasks.

The Government alleges that defendants conspired with Spivak to establish Verree as a pharmacy that would fill prescriptions without question for large quantities of oxycodone--a generic version of the opioid drug OxyContin--or opioid combinations.  Specifically, the government alleges 15 overt acts in which defendants: (1) filled obviously altered prescriptions for oxycodone without verifying the prescriptions with the issuing physicians; or (2) repeatedly filled prescriptions for dangerous amounts of opioid combinations.  In addition, defendants frequently required cash payments for oxycodone prescriptions even if the customers had insurance.

Defendants also agreed with Spivack to deceive Verree's wholesale supplier of controlled substances.  After the wholesale supplier communicated concerns about Verree's opioid distribution, the pharmacy created a "Due Diligence Procedure for Controlled Substances."  This policy required Verree employees to:  (1) check the state prescription drug monitoring program system; (2) use customer insurance unless the patient provided an explanation as to why they could not use insurance; and (3) verify prescriptions for customers from outside the

service area.  Defendants signed this policy yet continued to defy its requirements.

The wholesale supplier remained concerned about Verree's opioid distribution practices.  As a result, the supplier imposed a mandatory reduction in the amount of controlled substances it would provide.  In response, Verree created a "Narc Member" club that required patients to pay "dues" to ensure that their prescriptions for oxycodone would always be filled.  The Government alleges that defendants charged a patient a "Narc Member" fee on five occasions.

### III

Defendants argue that the Government failed to allege two elements necessary for the indictment:  (1) the defendants' subjective belief that they were knowingly and intentionally acting outside the course of a legitimate professional purpose; and (2) that the Controlled Substances Act ("CSA") applies to non-pharmacists or non-doctors.[3]  In addition, defendants claim that the Government failed to instruct the grand jury as to the necessary elements.[4]

---

3.  The second argument--that the CSA does not apply to non-pharmacists--only applies to defendant Pestrack, who was a lead pharmacy technician.  As noted above, defendant Goodman was a registered licensed pharmacist.

4.  This argument is without merit.  See, e.g., United States v. Williams, 504 U.S. 36, 45-55 (1992).

The CSA, 21 U.S.C. §§ 801 et seq., governs the manufacturing, distribution, and dispensing of controlled substances.  Under the CSA, there are five schedules of controlled substances--Schedules I, II, III, IV, and V--based on how likely a substance is to lead to dependency issues. Schedule II controlled substances, for example, may lead to severe psychological or physical dependance, while Schedule IV controlled substances may lead to relatively limited dependency.

The CSA requires those who distribute or dispense controlled substances to a patient, including pharmacies, to obtain a registration from the Drug Enforcement Administration. Individuals or entities who have received this registration are known as "registrants."  21 U.S.C. § 802(10), (21).  Registrants can only distribute Schedule II, III, and IV controlled substances upon a prescription.  21 U.S.C. § 829(a), (b).  The CSA's implementing regulations clarify that a prescription is effective only if it is issued for a "legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).

Section 841(a)(1) makes it unlawful for "any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance" unless there is a valid prescription.  Similarly, § 846 imposes penalties on "[a]ny

person who attempts or conspires to commit any offense defined" in the CSA.

The CSA's implementing regulations require that "[a] prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy . . . ." 21 C.F.R. § 1306.06. Section 1306.04 of the regulation imposes a legal duty on pharmacists to ensure that prescriptions for controlled substances are legitimate. It states that "the person knowingly filling" illegitimate prescriptions "shall be subject to the penalties provided" under the regulation. Id.

### IV

Defendants first argue that the Supreme Court's holding in Ruan v. United States, 142 S. Ct. 2370 (2022), requires the Government to prove that defendants had a subjective belief that they were knowingly and intentionally acting outside the course of a legitimate professional purpose and without authorization. In Ruan, two cases were consolidated in which a doctor was convicted under the CSA for dispensing controlled substances without authorization. Both doctors argued that they had issued valid prescriptions and that, even if the prescriptions were invalid, they did not knowingly or intentionally deviate from the standards set forth in

§ 1306.04(a).  The jury instructions in both cases did not instruct that the Government was required to prove that the doctors subjectively knew that their prescriptions fell outside the scope of their prescribing authority.  The Court held that:

> [T]he statute's "knowingly or intentionally" mens rea applies to authorization. After a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so.

Id. at 2375.

Ruan does not apply here.  As noted above, Ruan delt with the Government's burden of persuasion under § 841 at trial. It did not alter any pleading standards.  As a result, the Government must simply provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged" in the indictment.  Fed. R. Crim. P. 7(c)(1). Furthermore, "[a]n indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007), as amended

(Aug. 10, 2007) (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir.1989)).

The indictment meets the requirements set forth in Rule 7(c)(1) of the Federal Rules of Criminal Procedure. The Government alleges in each count of the indictment that defendants "knowingly and intentionally distribute[d] and dispense[d], outside the usual course of professional practice and for no legitimate medical purpose" the controlled substances in question. In addition, the indictment details how defendants filled obviously altered or forged prescriptions, requested cash only payments, and collected "Narc Members" dues from patients. Thus, the Government has sufficiently alleged that defendants had a subjective belief, that is that they were knowingly and intentionally acting outside a course of a legitimate professional purpose and without authorization.

Accordingly, the court will deny defendants' motion to dismiss the indictment on the grounds that the Government failed to allege defendants' subjective belief that they were knowingly and intentionally acting outside a course of a legitimate professional purpose and without authorization.

V

Defendant Pestrack next asserts that § 841 and § 846 do not apply to him because he is not a pharmacist or physician. He relies on the language in § 1306.04 which specifically refers

to medical practitioners and pharmacists.  As noted above, it states that "[t]he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription."  21 C.F.R. § 1306.04.  Pestrack contends that he had no legal duty as a non-pharmacist to be familiar with "red flags" or signs that prescriptions were illegitimate.

As noted above, § 841 and § 846 both apply to "any person" who commits the prohibited conduct. The language of the statute is not limited to physicians or pharmacists but instead extends to any individual who is distributing or dispensing a controlled substance without authorization.

Since the promulgation of § 1306.04, the District Court for the District of Kansas in United States v. Hilst addressed whether the regulations apply to non-pharmacists or non-physicians.[5]  No. 07-10079-01-WEB, 2007 WL 9717579 (D. Kan.

---

5.  The Government cites a number of cases in which the convictions of non-pharmacists and non-physicians under § 846 or § 841 were upheld.  However, these cases were decided prior to the implementation of § 1306.04.  The Government also cites a more recent decision from our Court of Appeals in which a marketing executive was charged under § 846.  See United States v. Kamra, No. 21-1615, 2022 WL 4998978 (3d Cir. Oct. 4, 2022) (non-precedential).  However, the defendant in that case did not dispute that § 846 or § 1306.04 applied to him.

Oct. 19, 2007).  In Hilst, the indictment charged that a computer technician violated § 841 by participating in a scheme to provide illegitimate prescriptions for controlled substances. The defendant allegedly accessed a website with the pharmacy's password that was used as part of the scheme.  The defendant moved to dismiss the indictment.

Like the defendants here, the computer technician argued that "the intent and scope of that regulation was that only prescribing doctors and issuing pharmacists would be subject to penalties under the [CSA]."  Id. at *2.  He asserted that "the regulation's imposition of penalties on doctors and pharmacists means the law 'was never intended . . . to reach common employees of a pharmacy.'"  Id. (citation omitted).  In addition, he maintained that "it 'was neither intended, nor is it reasonable' to 'impute to pharmacy employees the requisite knowledge or intent'" necessary for him to violate the CSA.  Id. (citation omitted).

In denying the motion to dismiss, the court first noted, as this court has, that "[t]he starting point for addressing these arguments is not § 1306.04, but rather § 841, the statute the defendants are charged with violating or conspiring to violate."  Id.  The statute on its face applies to all individuals who distribute or dispense controlled substances without authorization.  Id.  The court explained:

-10-

> Section 1306.04 clarifies that both the prescribing doctor and the pharmacist have a responsibility to see that the prescription and dispensing is proper, and that both may be subject to penalties under the CSA if controlled substances are improperly dispensed.  But the fact that § 1306.04 explicitly refers to liability of doctors and pharmacists does not reasonably imply that other persons are exempt from prosecution. Taken to its logical conclusion, defendant's argument would mean that a layman who knowingly organized, financed, directed, and helped carry out a scheme to have a corrupt physician write bogus prescriptions could not be liable under § 841 for aiding and abetting the physician in the unlawful distribution of controlled substances. Such a result would clearly contravene Congress' intent as reflected in the CSA.

Id. at *3.

This court agrees that § 1306.04 does not exempt non-pharmacists from the broad reach of § 841 or § 846.  These two sections clearly apply to any individual distributing or conspiring to distribute controlled substances without authorization.  As noted above, Pestrack was the lead pharmacy technician at Verree.  For over 30 years, he assisted at the pharmacy counter, filled prescriptions, and ordered medications.  Furthermore, the indictment alleges in detail that Pestrack was involved in filling obviously altered or forged prescriptions, requiring cash payments, and charging patients with "Narc Member" dues.  This conduct is clearly prohibited by § 841 and § 846.

It would be an absurd result to conclude that Congress intended to apply § 841 or § 846 only to medical practitioners and pharmacists and to exempt from criminal liability all others who participate in the criminal conduct prohibited therein. Accordingly, the court will deny the motion of defendant Pestrack to dismiss the indictment on the grounds that § 841 and § 846 do not apply to him as a non-pharmacist and non-medical practitioner.

VI

Defendants move, in the alternative, for the court to order the Government to provide the transcript of the legal instructions provided to the Grand Jury. Under Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure:

> The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs---of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury . . . .

Our Court of Appeals has explained that "[e]ven after the grand jury has concluded its proceedings, a private party petitioning for access to grand jury materials must show that the need for [access] outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." United States v. Smith, 123 F.3d

140, 148 (3d Cir. 1997) (quoting Douglas Oil Co. Of California v. Petrol Stops Northwest, 441 U.S. 211, 223 (1979)).

Defendants have not provided any evidence that the grand jury proceedings were irregular or that there was an error that substantially affected the outcome of the proceeding. Accordingly, the court will deny defendant's motion for a transcript of the instructions provided to the Grand Jury.

VII

The motion of defendants to dismiss the indictment or, in the alternative, to receive a transcript of the legal instructions provided to the Grand Jury will be denied.