```
                              .
The United States of America,.    Docket #CR-22-435-1 (HB)
                              .
            Plaintiff,        .
                              .     United States Courthouse
                              .     Philadelphia, PA
              vs.             .     September 6, 2023
                              .     10:00 a.m.
Todd Goodman,                 .
                              .
            Defendant.        .
.........................................................
```

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE HARVEY BARTLE III
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:            Joan E. Burnes, Esq.
                              U.S. Attorney's Office
                              615 Chestnut St.-Ste. 1250
                              Philadelphia, PA 19106

For The Defendant:            Rocco C. Cipparone, Jr.
                              Law Offices of Rocco C.
                              Cipparone, Jr.
                              157 Bridgeton Pike-Ste. 200-320
                              Mullica Hill, NJ 08062

Audio Operator                Nicole Spicer

Transcribing Firm:            Writer's Cramp, Inc.
                              1027 Betty Lane
                              Ewing, NJ 08628
                              609-588-8043

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Index

|                                  | Direct | Cross | Redirect | Recross | Further Redirect |
|----------------------------------|--------|-------|----------|---------|------------------|
| **Witnesses For The Plaintiff:** |        |       |          |         |                  |
|                                  |        |       |          |         |                  |
| **Witnesses For The Defendant:** |        |       |          |         |                  |

| EXHIBITS: | Marked | Received |
|-----------|--------|----------|
|           |        |          |

SUMMATION BY:

THE COURT: Finding          29

        1           THE CLERK:  All rise.  Oyez, oyez, oyez.  All manner

        2   of persons having anything to say before the Honorable Harvey

        3   Bartle, III, Judge of the United States District Court in and

        4   for the Eastern District of Pennsylvania, may at present

        5   appear and they shall be heard.  God save the United States

        6   and this Honorable Court.  Court is now in session.  Please be

        7   seated.

        8           THE COURT:  Good morning.  You may be seated.

        9           ALL:  Good morning, Your Honor.

       10           THE COURT:  The Court has before it this morning the

       11   guilty plea hearing in the case of the United States of

       12   America vs. Todd Goodman, criminal action 22-435-1.  Ms.

       13   Spicer, would you please swear in the Defendant.

       14           THE CLERK:  Please stand and raise your right hand.

       15                TODD GOODMAN, DEFENDANT, SWORN

       16           THE CLERK:  Please state your name.

       17           MR. GOODMAN:  Todd Goodman.

       18           THE CLERK:  And will you please spell your last name

       19   for the record.

       20           MR. GOODMAN:  G-O-O-D-M-A-N.

       21           THE CLERK:  Thank you.

       22           THE COURT:  Mr. Goodman, do you read, write and

       23   understand the English -- you may be seated.

       24           MR. GOODMAN:  Thank you, Your Honor.

       25           THE COURT:  Just keep the microphone close to you so

1    we can hear what you're saying.  Mr. Goodman, do you read,

2    write and understand the English language?

3              MR. GOODMAN:  I do, Your Honor.

4              THE COURT:  Do you understand that during this

5    proceeding this morning I will be asking you a series of

6    questions?

7              MR. GOODMAN:  I do, Your Honor.

8              THE COURT:  And I will assume that your answers will

9    be truthful.

10              MR. GOODMAN:  They will, Your Honor.

11              THE COURT:  Since you are now sworn and are under

12    oath, do you understand that if you should give me false

13    answers, you are subject to possible prosecution for perjury,

14    that is lying under oath?

15              MR. GOODMAN:  I do, Your Honor.

16              THE COURT:  Do you also understand that I will be

17    asking you questions this morning in order to satisfy myself

18    that you are competent and able to enter a plea?

19              MR. GOODMAN:  I understand that, Your Honor.

20              THE COURT:  And to satisfy myself that if you decide

21    to plead guilty, that you are knowingly and voluntarily giving

22    up certain rights to which you would be entitled if you went

23    to trial?

24              MR. GOODMAN:  I understand that, Your Honor.

25              THE COURT:  If at any time you do not understand a

**1**   question or you wish a further explanation, please indicate

**2**   that to me and I'll do my best to rephrase the question or

**3**   explain it to you.

**4**          MR. GOODMAN:  I will do that.  Thank you.

**5**          THE COURT:  Also if at any time you wish to speak to

**6**   your attorney outside of my hearing, I will, of course, permit

**7**   you to do that.

**8**                      DIRECT EXAMINATION

**9**   BY THE COURT:

**10**  Q.  Mr. Goodman, are you a citizen of the United States?

**11**  A.  I am, Your Honor.

**12**  Q.  And how old are you?

**13**  A.  I am 60 years old.

**14**  Q.  How far did you go in school?

**15**  A.  I went through law school, graduated.

**16**  Q.  Did you also go to pharmacy school?

**17**  A.  I did, Your Honor.

**18**  Q.  And you graduated?

**19**  A.  I did.

**20**  Q.  Have you been employed during the last several years and

**21**  if so, what job or jobs have you held?

**22**  A.  I've been employed the last year and -- well, for many

**23**  years at Oxman Goodstadt Kuritz law firm.  I've stopped -- I

**24**  was employed in a pharmacy, Rapoport Pharmacy, from November

**25**  of 2021 up until April of 2022, and I had worked at Verree

1   Pharmacy for approximately -- 2005 until that fall of 2021,

2   November of 2021.

3   Q.  Have you taken any drugs, medicine or pills in the last 24

4   hours?

5   A.  Only for my blood pressure, Your Honor.

6   Q.  Does that medication affect your ability to understand the

7   proceedings here today?

8   A.  It does not.

9   Q.  Have you drunk any alcoholic beverages in the last 24

10  hours?

11  A.  I have not.

12  Q.  Have you ever been hospitalized or treated for mental

13  illness or narcotic addiction?

14  A.  I have not, Your Honor.

15  Q.  Are you currently under the care of a physician?

16  A.  I am -- other than just yearly visits with my primary.

17  Q.  Thank you.  Do you understand you have a right to be

18  represented by an attorney at every stage of the proceeding

19  against you?

20  A.  I do, Your Honor.

21  Q.  And that if you cannot afford the service of an attorney,

22  the Court appoints one to represent you free of charge?

23  A.  I understand that, Your Honor.

24  Q.  Do you have an attorney here today?

25  A.  I do, Your Honor.

1    Q.   Who is that?

2    A.   It's Rocco Cipparone.

3    Q.   Have you had ample opportunity to discuss your case with

4    Mr. Cipparone?

5    A.   I have, Your Honor.

6    Q.   Are you satisfied with his representation of you?

7    A.   I am very satisfied with his representation.

8    Q.   Mr. Goodman, have you received a copy of a document called

9    a Superceding Indictment which contains the written charge

10   against you?

11   A.   I did, Your Honor.

12        MR. CIPPARONE:   Your Honor, just for the record,

13   it's a Superceding Information.

14        THE COURT:   I'm sorry, Superceding Information.

15   You're absolutely right.

16        MR. CIPPARONE:   Thank you.

17   BY THE COURT:

18   Q.   Mr. Goodman, do you understand that, in summary, the

19   Superceding Information charges that from on or about May 26,

20   2018, in Philadelphia in the Eastern District of Pennsylvania

21   and elsewhere, you, who are the subject to the requirements of

22   Part C of the Controlled Substances Act, knowingly distributed

23   and dispensed and aided and abetted the distribution and

24   dispensing of a mixture or substance containing a detectible

25   amount of a schedule 2 controlled substance, that is

1   approximately 240 tablets of Oxycodone, each 30 milligrams, to

2   an individual based on an altered and forged written

3   prescription that was not a valid written prescription by a

4   licensed practitioner issued for a legitimate medical purpose?

5   You did all this in violation of the requirements of §829 of

6   the Controlled Substances Act.

7   A.   Yes, Your Honor.

8   Q.   Do you understand that this charge that I've described has

9   been brought by the United States Attorney by the filing of

10  this Superseding Information?

11  A.   I do, Your Honor.

12  Q.   Do you understand that you have a constitutional right to

13  be charged by an Indictment of the Grand Jury but you can

14  waive that right and consent to be charged by an Information

15  of the United States Attorney?

16  A.   I understand that, Your Honor.

17  Q.   Do you that unless you waive Indictment, you may not be

18  charged with a crime until a Grand Jury finds by returning an

19  Indictment that there is probable cause to believe that a

20  crime has been committed and you committed it?

21  A.   I understand that, Your Honor.

22  Q.   Do you understand that if you do not waive, that is, give

23  up your right to Indictment, the Government may present this

24  case to the Grand Jury and request that it indict you?

25  A.   I understand that, Your Honor.

1    Q.  Do you understand that a Grand Jury might or might not

2    indict you?

3    A.  I understand that, Your Honor.

4    Q.  Do you understand that if you give up your right to

5    Indictment by the Grand Jury, the case will proceed against

6    you on the basis of the United States Attorney's Superceding

7    Information, just as if you had been indicted?

8    A.  I understand that, Your Honor.

9    Q.  Have you discussed the matter of giving up your right to

10   Indictment by the Grand Jury with your attorney?

11   A.  I have, Your Honor.

12   Q.  Do you wish to give up your right to Indictment by the

13   Grand Jury?

14   A.  I do, Your Honor.

15   Q.  Have any threats or promises been made to induce you to

16   give up your right to Indictment?

17   A.  No, Your Honor.

18        THE COURT:  Does defense counsel see any reason why

19   the Defendant should not waive Indictment?

20        MR. CIPPARONE:  No, Your Honor.

21        THE COURT:  I understand that there is a Waiver of

22   Indictment form that has been signed.  I am going to ask Ms.

23   Spicer to place that before Mr. Goodman.

24        MR. GOODMAN:  Thank you.

25   BY THE COURT:

1   Q.  Mr. Goodman, is that your signature on the Waiver of

2   Indictment form?

3   A.  Yes, it is, Your Honor.

4   Q.  Did you read it before you signed it?

5   A.  I did, Your Honor.

6   Q.  Did you understand what it said?

7   A.  I did, Your Honor.

8   Q.  Did you discuss it with your attorney before you signed

9   it?

10  A.  Yes, I did, Your Honor.

11  Q.  Thank you.

12          THE COURT:  Ms. Geiger, will you please summarize

13  the terms of any plea agreement.

14          MS. GEIGER:  Yes, Your Honor.  In the agreement, the

15  Defendant agrees to plead guilty to count 1 of the Superseding

16  Information, waiving prosecution by Indictment and the statute

17  of limitations, charging him with the misdemeanor offense of

18  knowingly distributing and dispensing a mixture and substance

19  containing a detectible amount of a schedule 2 controlled

20  substance, and aiding and abetting the same.  The Defendant

21  further acknowledges his waiver of rights as set forth in the

22  attachment to the agreement.  At the time of sentencing, the

23  Government will move to dismiss counts 1 through 10 of the

24  initial Indictment filed on December 1st, 2022, as to the

25  Defendant.  The Defendant waives the statute of limitations as

**1**    to all counts to be dismissed under this agreement and agrees

**2**    that if the Defendant withdraws from or successfully

**3**    challenges the guilty plea entered under this agreement, or if

**4**    these counts are otherwise reinstated under the terms of this

**5**    agreement, neither the statute of limitations nor the double

**6**    jeopardy clause will bar prosecution on any of these dismissed

**7**    counts.

**8**    At the time of sentencing, the Government will also make

**9**    whatever sentencing recommendations as to imprisonment, fines,

**10**    forfeiture, restitution, and other matters which the

**11**    Government deems appropriate.  It will comment on the evidence

**12**    and circumstances of the case, bring to the Court's attention

**13**    all facts relevant to sentencing, including evidence relating

**14**    to dismissed counts, if any, and to the character and any

**15**    relevant criminal conduct of the Defendant, address the Court

**16**    regarding the nature and seriousness of the offense, respond

**17**    factually to questions raised by the Court, correct factual

**18**    inaccuracies in the pre-sentencing report or sentencing

**19**    record, and rebut any statement of facts made by or on behalf

**20**    of the Defendant at sentencing.  Nothing in this agreement

**21**    shall limit the Government in its comments in and responses to

**22**    any post-sentencing matters.

**23**    The plea agreement is conditioned upon the following:

**24**    Co-Defendant Eric Pestrack entering a guilty plea in this

**25**    case, and acceptance of that plea by a United States District

1       Judge at the time of the guilty plea hearing.  If Co-Defendant

2       Pestrack does not satisfy these two conditions, or

3       subsequently seeks to withdraw his guilty plea, the United

4       States Attorney's office, in its sole discretion, will be

5       released from all its obligations under this agreement.  In

6       addition, if Co-Defendant Pestrack violates this plea

7       agreement, the United States Attorney's office, in its sole

8       discretion, may void this Defendant's plea agreement.  In the

9       event --

10              THE COURT:  You mean, it violates his agreement, not

11      this agreement.

12              MS. GEIGER:  Correct, violates his plea agreement.

13              THE COURT:  Right.

14              MS. GEIGER:  Apologies, Your Honor.  In the event

15      that the Defendant's conviction is later vacated for any

16      reason, the conviction of Co-Defendant Pestrack is later

17      vacated for any reason, the Defendant violates this

18      agreements, Co-Defendant Pestrack violates his plea agreement,

19      the Defendant's plea is later withdrawn, or Co-Defendant

20      Pestrack's plea is later withdrawn, the Defendant waives all

21      defenses based on speedy trial and the statute of limitations

22      for 120 days from any of these events.  In order to facilitate

23      the collection of the criminal monetary penalties to be

24      imposed in connection with this prosecution, the Defendant

25      agrees fully to disclose all income, assets, liabilities, and

1    financial interests held directly or indirectly, whether held
2    in his own name or in the name of a relative, spouse,
3    associate, another person or entity, and whether held in this
4    country or outside this country.  The Defendant agrees that
5    any restitution or fine imposed by the Court shall be due and
6    payable immediately and on such terms that the Court may
7    impose.  The Defendant may not withdraw his plea because the
8    Court declines to follow any recommendation, motion or
9    stipulation by the parties to this agreement.

10    No one has promised or guaranteed to the Defendant what
11    sentence the Court will impose.  Pursuant to §61.4 of the
12    Sentencing Guidelines, the parties enter into stipulations
13    under the Sentencing Guidelines manual, including that the
14    parties agree and stipulate that as of the date of this
15    agreement, the Defendant has demonstrated acceptance of
16    responsibility for his offense, making the Defendant eligible
17    for a two-level downward adjustment under §3E1.1(a) of the
18    Sentencing Guidelines.

19    The Defendant understands and agrees that the status of
20    any professional license or certification held by the
21    Defendant is not protected by this agreement and is a matter
22    solely within the discretion of the appropriate licensing,
23    regulatory and disciplinary authorities, and the Government
24    will inform the appropriate professional licensing, regulatory
25    and disciplinary authorities in Pennsylvania of the

**1**  disposition of the criminal charges filed against the

**2**  Defendant in this case.  If the Defendant commits any federal,

**3**  state, or local crime between the date of this agreement and

**4**  his sentencing, or otherwise violates any provision of this

**5**  agreement, the Government may declare a breach of the

**6**  agreement and may, at its option, seek the remedies that are

**7**  outlined in the plea agreement.  The decision shall be in the

**8**  sole discretion of the Government, both whether to declare a

**9**  breach and regarding the remedy or remedies to seek.

**10**      In exchange for the promises made by the Government in

**11**  entering this plea agreement, the Defendant voluntarily and

**12**  expressly waives all rights to file any appeal, any collateral

**13**  attack, or any other writ or motion that challenges the

**14**  Defendant's conviction, sentence, or any other matter relating

**15**  to this prosecution, except for the limited circumstances

**16**  outlined in the plea agreement, which are if the Government

**17**  appeals from the sentence, then the Defendant may file a

**18**  direct appeal of his sentence; if the Government does not

**19**  appeal, then notwithstanding the waiver provision that's set

**20**  forth in the agreement, the Defendant may file a direct appeal

**21**  or petition for collateral relief but may raise only a claim

**22**  if otherwise permitted by law in such a proceeding that the

**23**  Defendant's sentence and any count of conviction exceeds the

**24**  statutory maximum for that count as set forth in paragraph 5

**25**  of the agreement; challenging a decision by the Sentencing

1   Judge to impose an upward departure pursuant to the

2   guidelines; challenging a decision by the Sentencing Judge to

3   impose an upward variance above the final guideline range

4   determined by the Court; and that any attorney who represented

5   the Defendant during the course of this criminal case provided

6   constitutionally ineffective assistance of counsel.  If the

7   Defendant does appeal or seek collateral relief pursuant to

8   this subparagraph, no issue may be presented by the Defendant

9   in such a proceeding other than those that are described.

10  Thank you, Your Honor.

11          THE COURT:  I have before me what appears to be the

12  original guilty plea agreement.  I'm asking Ms. Spicer to

13  place that before you, Mr. Goodman.

14  BY THE COURT:

15  Q.  Mr. Goodman, is that your signature on the last page of

16  that document?

17  A.  It is, Your Honor.

18  Q.  Did you read the document before you signed it?

19  A.  I did, Your Honor.

20  Q.  Did you understand what it said?

21  A.  I did, Your Honor.

22  Q.  Did you discuss it with your attorney before you signed

23  it?

24  A.  I did, Your Honor.

25  Q.  There is also an additional document attached called

1   Acknowledgment of Rights.

2   A.  Yes, Your Honor.

3   Q.  It's a shorter document.  Is that your signature on the

4   last page?

5   A.  It is, Your Honor.

6   Q.  Did you read the document before you signed it?

7   A.  I did, Your Honor.

8   Q.  Did you understand what it said?

9   A.  I did, Your Honor.

10   Q.  Did you discuss it with your attorney before you signed

11   it?

12   A.  I did, Your Honor.

13   Q.  Did the Government accurately summarize the terms of the

14   agreement?

15   A.  They did, Your Honor.

16   Q.  You understand, Mr. Goodman, that in that agreement is

17   what we call an Appellate Waiver, which means that you will be

18   giving up your right to appeal any sentence which I should

19   impose, except under the limited circumstances set forth in

20   the agreement, and you're giving up your right to later attack

21   any sentence which I should impose except under the terms set

22   forth in the agreement?

23   A.  I do understand that, Your Honor.

24   Q.  You also understand that the agreement is also contingent

25   on certain conduct of your Co-Defendant, Eric Pestrack, over

1    which you have no control?

2    A.   I am aware of that, yes, Your Honor.

3    Q.   Has anyone made any threat or promise or assurance to you

4    of any kind other than what is set forth in the Plea Agreement

5    and Acknowledgment of Rights to convince or induce you to sign

6    them?

7    A.   No, Your Honor.

8    Q.   Mr. Goodman, do you understand you have a right to be

9    tried by a jury if you plead not guilty?

10   A.   I understand that, Your Honor.

11   Q.   Do you understand that you through your attorney could

12   participate in the selection of any jury?

13   A.   I understand that, Your Honor.

14   Q.   Are you aware that if you plead not guilty you have the

15   right to be tried with the assistance of a lawyer?

16   A.   I understand that, Your Honor.

17   Q.   Do you understand that at a trial you would be presumed to

18   be innocent?

19   A.   I understand that, Your Honor.

20   Q.   And that the Government would be required to prove you

21   guilty by competent evidence and beyond a reasonable doubt

22   before you could be found guilty?

23   A.   I understand that, Your Honor.

24   Q.   Do you understand that in the course of a trial the

25   witnesses for the Government would have to come to Court and

1   testify in your presence?

2   A.   I understand that, Your Honor.

3   Q.   And that your attorney could cross-examine the witnesses

4   for the Government, object to evidence offered by the

5   Government, and offer evidence on your behalf?

6   A.   I understand that, Your Honor.

7   Q.   Are you aware that if you plead guilty you'll be giving up

8   your right to challenge the manner in which the Government

9   obtained evidence against you?

10  A.   I am, Your Honor.

11  Q.   Are you aware that at a trial you would have the right to

12  subpoena, that is compel the attendance of witnesses?

13  A.   I am aware of that, Your Honor.

14  Q.   And that you would have the right to present your own

15  witnesses including character witnesses whose testimony could

16  possibly raise a reasonable doubt about your guilt?

17  A.   I understand that, Your Honor.

18  Q.   Do you understand that at a trial, while you would have

19  the right to testify if you chose to do so, you would also

20  have the right not to testify?

21  A.   Yes, Your Honor.

22  Q.   And that no inference or suggestion of guilt could be

23  drawn from the fact that you did not testify?

24  A.   Yes, Your Honor.

25  Q.   Do you understand that you would have the right not to be

1    compelled to incriminate yourself?  That means no one could

2    force you to testify or to make a statement about what

3    happened.

4    A.   I understand that, Your Honor.

5    Q.   Are you aware that your attorney could argue to the Jury

6    or to the Court on your behalf against the Government's case?

7    A.   Yes, Your Honor.

8    Q.   Do you understand that you could only be convicted by a

9    jury which unanimously found you guilty?  That means all 12

10   jurors would have to agree on your guilt before you could be

11   found guilty.

12   A.   I understand that, Your Honor.

13   Q.   If at trial you were found guilty, do you understand that

14   after a trial you would be able to appeal the conviction to an

15   Appellate Court?

16   A.   I understand that, Your Honor.

17   Q.   And that you could have a lawyer represent you on that

18   appeal?

19   A.   Yes, Your Honor.

20   Q.   And if you could not afford a lawyer, the Court would

21   appoint one to represent you free of charge?

22   A.   I understand that, Your Honor.

23   Q.   And that the Appellate Court, of course, might or might

24   not reverse your conviction?

25   A.   I understand that, Your Honor.

1   Q.  If you plead guilty and I accept your plea, do you

2   understand you will give up forever your right to a further

3   trial of any kind as well as the other rights that I have just

4   discussed?

5   A.  I understand that, Your Honor.

6   Q.  And that there will be no trial?

7   A.  I understand that, Your Honor.

8   Q.  And as we discussed a few moments ago, if you plead guilty

9   you'll be giving up your right to appeal any sentence or later

10  to file any collateral proceeding as a result of that

11  sentence, except under the limited circumstances set forth in

12  the Plea Agreement?

13  A.  I do understand that, Your Honor.

14  Q.  Mr. Goodman, do you understand if you plead guilty today

15  you'd be pleading guilty to one count of knowingly

16  distributing and dispensing a mixture and substance containing

17  a detectible amount of schedule 2 controlled substance in

18  violation of Title 21 United States Code §842(a)(1) and

19  842(c)(2)(A), and aiding and abetting the same in violation of

20  Title 18 United States Code §2?

21  A.  I do understand that, Your Honor.

22  Q.  Mr. Goodman, I want to review briefly with you the

23  essential elements of the crimes, starting with knowingly

24  dispensing the controlled substance without a valid

25  prescription.  First, that you were subject to the

1      requirements of Part C of the Controlled Substances Act; 2)

2      That you knowingly distributed and dispensed a mixture and

3      substance containing a detectible amount of schedule 2

4      controlled substances, that is approximately 240 tablets of

5      Oxycodone, each of 30 milligrams, to an individual; 3) You did

6      so based on an altered and forged written prescription that

7      was not a valid written prescription by a licensed

8      practitioner issued for a legitimate medical purpose, and you

9      did so in violation of the requirements of §29 of the

10     Controlled Substances Act.  Do you understand that they're the

11     essential elements of that crime?

12     A.  Yes, I do, Your Honor.

13     Q.  Now with respect to aiding and abetting.  The elements are

14     that the principal committed the offense charged by committing

15     each of the elements of the offense charged; you knew that the

16     offense charged was going to be committed or was being

17     committed by the principal; that you did some act for the

18     purpose of aiding, assisting, soliciting, facilitating or

19     encouraging the principal in committing the offense and with

20     the intent that the principal commit the offense; and that

21     your acts did in some way aid, assist, facility or encourage

22     the principal to commit the acts.

23     A.  Yes, Your Honor.

24           THE COURT:  Ms. Geiger, would you please summarize

25     the factual basis of any plea.

1          MS. GEIGER:  Yes, Your Honor.  If this case were to

2     proceed to trial, the Government would introduce evidence to

3     establish the following facts:  Oxycodone was a generic

4     version of the opioid drug Oxycontin.  Opioids could cause

5     physical and psychological dependence, even when taken as

6     prescribed.  At high doses, opioids would cause life-

7     threatening conditions or death, especially when used in

8     combination with other controlled substances or alcohol.

9     Oxycodone was a schedule 2 controlled substance.  Spivack,

10    Incorporated, doing business as Verree Pharmacy, also known as

11    Verree, was a small neighborhood pharmacy located at 7960

12    Verree Road in Philadelphia, Pennsylvania.  Verree was open

13    for business seven days per week.  United States Drug

14    Enforcement Administration, or DEA, granted a registration to

15    Verree which allowed it to purchase and dispense schedule 2

16    through 5 controlled substances.  Accordingly, the pharmacist

17    and pharmacy technicians who dispensed controlled substances

18    at Verree were subject to the requirements of Part C of the

19    Controlled Substances Act.  By in or about 2018, Verree was

20    the top retail pharmacy purchaser of Oxycodone in

21    Pennsylvania.  Verree cultivated a reputation as an easy-fill,

22    no-questions-asked pharmacy for those seeking large quantities

23    of Oxycodone.  Defendant Todd Goodman was employed as a part-

24    time pharmacist at Verree for approximately 20 years.  He was

25    registered as a licensed pharmacist since in or about August,

**1**   **1986.  Co-Defendant Eric Pestrack was employed as the lead**
**2**   **pharmacy technician at Verree for more than 30 years.  He**
**3**   **worked full-time, usually Monday through Friday, and also**
**4**   **covered weekend shifts when another pharmacy technician was**
**5**   **unavailable.  Defendants Goodman and Pestrack were trusted**
**6**   **employees.  They had keys to Verree and the combination to the**
**7**   **safe that contained cash and controlled substances.  In the**
**8**   **course of their employment at Verree, Defendant Goodman**
**9**   **together with Co-Defendant Pestrack filled obviously altered**
**10**  **written prescriptions for Person 1 and his wife, both known to**
**11**  **the United States Attorney, for large quantities of Oxycodone,**
**12**  **without verifying the prescription with the issuing physician,**
**13**  **checking the Pennsylvania Prescription Drug Monitoring**
**14**  **Program, or otherwise resolving red flags.  The Oxycodone**
**15**  **prescriptions for Person 1 and his wife, filled by Defendants**
**16**  **Goodman and Pestrack, were forged by Person 1 and were not**
**17**  **based on a valid written prescription by a licensed pharmacist**
**18**  **issued for a legitimate medical purpose.  For example, on or**
**19**  **about May 26, 2018, in Philadelphia, Defendant Goodman,**
**20**  **together with Co-Defendant Pestrack, knowingly distributed and**
**21**  **dispensed and aided and abetted the distribution and**
**22**  **dispensing of a mixture and substance containing a detectible**
**23**  **amount of a schedule 2 controlled substance, that is**
**24**  **approximately 240 tablets of Oxycodone 30 milligrams to Person**
**25**  **1, based on an altered and forged written prescription that**

**1** was not a valid written prescription by a licensed

**2** practitioner issued for a legitimate medical purpose, in

**3** violation of the requirements of §829 of the Controlled

**4** Substances Act.  Person 1 paid 820 in cash, $820 in cash for

**5** this forged prescription to be filled.  Thank you, Your Honor.

**6** BY THE COURT:

**7** Q.  Mr. Goodman, do you agree that the Assistant United States

**8** Attorney has accurately summarized the facts in this case?

**9** A.  I'm going to leave that to my attorney, if I may, Your

**10** Honor.

**11**          THE COURT:  Yes.

**12**          MR. CIPPARONE:  Judge, just to clarify, what -- I

**13** understand that's what the Government's contention is overall,

**14** that it would prove at trial, but what Mr. Goodman is

**15** admitting by way of factual basis is that at the relevant

**16** time, of course, he was employed as a pharmacist at Verree

**17** Pharmacy; he was and is a licensed pharmacist at the relevant

**18** times; and that as charged in paragraph 15 of the Information,

**19** on May 26, 2018, he did distribute approximately 240 tablets

**20** of Oxycodone 30 milligrams to Person 1; that he was aware that

**21** it was based on an altered and forged written prescription

**22** which was not a valid written prescription by a licensed

**23** practitioner; and that Person 1 paid $820 in cash to the

**24** pharmacy for that prescription to be filled, and that he

**25** dispensed those pills knowing those facts, Your Honor.  That's

1   what he agrees.

2          THE COURT:  Ms. Geiger, are you agreeable to that

3   summation by Mr. Cipparone?

4          MS. GEIGER:  Yes, Your Honor.

5   BY THE COURT:

6   Q.  Mr. Goodman, do you agree that your attorney has

7   accurately summarized the facts in this case?

8   A.  Yes, Your Honor.

9          THE COURT:  Ms. Geiger, would you please state the

10  maximum penalty to which Mr. Goodman is subject, including any

11  mandatory minimum penalties.

12         MS. GEIGER:  Yes, Your Honor.  The total statutory

13  maximum sentence on count 1 of the Superseding Information is

14  one year of imprisonment, a one-year period of supervised

15  release, a $100,000 fine, and a $25 special assessment.

16  BY THE COURT:

17  Q.  Mr. Goodman, do you understand what the maximum penalty in

18  this matter is as set forth by the Assistant United States

19  Attorney?

20  A.  I do, Your Honor.

21  Q.  Mr. Goodman, do you understand that if you plead guilty

22  and are sentenced, you may be deprived of certain valuable

23  rights, such as your right to vote, to hold public office, to

24  serve on a jury, to serve in the Armed Forces, possess a fire

25  arm, or to hold a professional license?

**1**   A.   I understand that, Your Honor.

**2**   Q.   Do you understand the Court will not be able to determine

**3**   how the Advisory Sentencing Guidelines and other applicable

**4**   law will be applied in your case until after a pre-sentence

**5**   report is completed, and both you and the Government have had

**6**   an opportunity to challenge the facts and other matters set

**7**   forth in that report?

**8**   A.   Yes, Your Honor.

**9**   Q.   Do you understand that the Court could, in appropriate

**10**  circumstances, impose a sentence which is more severe or less

**11**  severe than the sentence which the Advisory Sentencing

**12**  Guidelines recommend?

**13**  A.   I understand that, Your Honor.

**14**  Q.   Do you understand that if you are sent to prison, a term

**15**  of supervised release will be imposed to be served after you

**16**  are released from prison?

**17**  A.   I'm aware of that, Your Honor.

**18**  Q.   And if you should violate the terms of your supervised

**19**  release, you may be returned to prison?

**20**  A.   I understand that, Your Honor.

**21**  Q.   Do you understand, Mr. Goodman, that on the basis of a

**22**  guilty plea, it is always possible that you could receive a

**23**  sentence up to the maximum permitted by law?

**24**  A.   I am aware of that, Your Honor.

**25**  Q.   Do you understand that you will not be entitled to

1 withdraw any guilty plea if I should impose a more severe

2 sentence than you expect or that anyone else recommends?

3 A.  I understand that, Your Honor.

4 Q.  Have you discussed with your attorney the charge against

5 you, your right to contest it, and the maximum possible

6 penalty?

7 A.  I have, Your Honor.

8 Q.  Having heard from me what your rights are if you plead not

9 guilty, and what may occur if you plead guilty, do you still

10 wish to give up your right to a trial and plead guilty?

11 A.  I do, Your Honor.

12 Q.  Has anyone threatened you, coerced you or forced you in

13 any way to plead guilty?

14 A.  No, Your Honor.

15 Q.  Has any plea agreement been entered into or other promises

16 made other than what has already been stated on the record

17 here?

18 A.  No, Your Honor.

19 Q.  Has anyone told you or promised you what sentence this

20 Court will impose?

21 A.  No, Your Honor.

22          THE COURT:  Does either the attorney for the

23 Government or the attorney for the Defendant have any doubts

24 as to Mr. Goodman's competence to enter a plea today?

25          MS. GEIGER:  No, Your Honor.

1          MR. CIPPARONE:  No, Your Honor.

2          THE COURT:  Are counsel satisfied that the

3    willingness to plead guilty is voluntary?

4          MS. GEIGER:  Yes, Your Honor.

5          MR. CIPPARONE:  I am, Your Honor.

6          THE COURT:  Are counsel satisfied that a guilty plea

7    is not based on an plea agreement or promises except as

8    disclosed on this record?

9          MS. GEIGER:  Yes, Your Honor.

10         MR. CIPPARONE:  Yes, Your Honor.

11         THE COURT:  Are counsel satisfied that any guilty

12   plea is being made with a full understanding by the Defendant

13   of the nature of the charge and the maximum possible penalty,

14   and of the Defendant's legal rights to contest the charge?

15         MS. GEIGER:  Yes, Your Honor.

16         MR. CIPPARONE:  I am, Your Honor.

17         THE COURT:  Are counsel satisfied that there is a

18   factual basis for the plea?

19         MS. GEIGER:  Yes, Your Honor.

20         MR. CIPPARONE:  Yes, Your Honor.

21         THE COURT:  This case is proceeding by way of a

22   Superseding Information.  The Court finds that the Defendant's

23   Waiver of Indictment is knowing, intelligent and voluntary;

24   the Waiver of Indictment is accepted.  Ms. Spicer, will you

25   please take the plea.

**1**      THE CLERK:  Please stand.  Todd Goodman, you have

**2**  been charged with Superseding Information #22-CR-435 charging

**3**  you with knowingly distributing and dispensing a mixture and

**4**  substance containing a detectible amount of schedule 2

**5**  controlled substance in violation of 21 U.S.C. §842(a)(1) and

**6**  (c)(2)(A), and aiding and abetting in the same in violation of

**7**  U.S.C. §2.  As to count 1 of the Superseding Information, how

**8**  do you plead now, guilty or not guilty?

**9**      MR. GOODMAN:  Guilty.

**10**     THE COURT:  You may be seated.  Mr. Goodman, are you

**11** pleading guilty here today because you are in fact guilty as

**12** charged?

**13**     MR. GOODMAN:  Yes, Your Honor.

**14**     THE COURT:  I find that the Defendant, Todd Goodman,

**15** is competent to plead, that his plea of guilty is knowing and

**16** voluntary and not the result of force or threats or any

**17** promises apart from the plea agreement disclosed on this

**18** record.  I further find there is a factual basis for his plea

**19** of guilty; that the Defendant understands the charge, his

**20** legal rights, and the maximum possible penalty; and that the

**21** Defendant understands he is waiving, that is giving up, his

**22** right to a trial.  The Court accepts the guilty plea.  I will

**23** order a pre-sentence investigation report, and I will set

**24** sentencing in this matter for December 13th, 2023, at 9:30

**25** a.m. in this courtroom.  Mr. -- this is not, of course, Mr.

1    Goodman's initial appearance, you agree, so bail has been set

2    previously.

3           MS. GEIGER:  Yes, I agree, Your Honor, and the

4    Government isn't seeking any change to bail conditions.

5           THE COURT:  Is that agreeable, Mr. Cipparone?

6           MR. CIPPARONE:  That is, Your Honor, right.

7           THE COURT:  All right, thank you very much.

8           MR. CIPPARONE:  Thank you, Your Honor.  Have a good

9    day.  We'll see you.

10          THE COURT:  Have a good day.

11          MR. GOODMAN:  Thank you, Your Honor.

12          MS. GEIGER:  Thank you, Your Honor,.

13          THE COURT:  Thank you.

14          THE CLERK:  All rise.

15      (Court adjourned)

16

17                      CERTIFICATION
18   I, Lewis Parham, certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23   Lewis Parham                        9/11/23
24
25   _____        _____
26   Signature of Transcriber            Date